### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JEFF BAHNER, individually, and as parent and next friend of minor C.B., et al., ) ) ) Plaintiff, ) ) v. ) ) USD 321 KAW VALLEY, et al., ) ) ) Defendants. ) | Case No. 24-cv-2361-HLT-TJJ |

### MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion to Compel Discovery (ECF No. 28). Plaintiffs request an order, pursuant to Fed. R. Civ. P. 37(a), overruling Defendants' objections to Plaintiffs' First Interrogatories and First Requests for Production ("RFPs") and compelling production of responsive documents and complete responsive answers. As explained below, Plaintiffs' motion is granted.

**I.    Relevant Background**

Plaintiffs Jeff and Heather Bahner as next friend of minor C.B. (collectively "Plaintiffs"), bring this suit against Defendants USD 321 Kaw Valley ("School District"), Sarah Sanders ("Sanders"), Taylor Hurla ("Hurla"), and Albert Bahret ("Bahret") (collectively "Defendants").[1] C.B. is a child with a disability who receives special education under the category of intellectual disability. Defendant Bahret was assigned to assist C.B. with his educational needs, as a paraprofessional. Plaintiffs allege Bahret engaged in unlawful treatment of C.B., including striking C.B. in the neck and/or face; aggressively pulling C.B. by his shirt collar and arms when removing him from the

---

[1] The facts and allegations in this section are taken from Plaintiffs' First Amended Complaint. *See* Pls.' First Am. Compl., ECF No. 22.

classroom; yelling derogatory words at C.B.; locking C.B. in a cage used to store athletic equipment, taking a photo of C.B. locked in the cage, and distributing it to other staff members.

Plaintiffs allege Hurla, the school's special education teacher in charge of C.B.'s classroom and Bahret's supervisor, and Sanders, the special education director in charge of the School District's special education teachers and staff, were aware of the alleged behavior and attempted to cover it up. Plaintiffs also allege Sanders instructed staff members not to report C.B.'s treatment to the Kansas Department of Children and Families ("DCF").

In or around November 2023, Plaintiffs raised concerns to the School District and Sanders regarding C.B.'s treatment. At a subsequent Individualized Education Program ("IEP") Team Meeting convened pursuant to the Individuals with Disabilities Act ("IDEA"), Plaintiffs allege they confronted staff with their concerns regarding C.B.'s treatment, and requested Bahret no longer serve as C.B.'s paraprofessional. Shortly after the IEP meeting, someone reported Plaintiffs to the DCF hotline as suspected abusers and/or for purportedly neglecting C.B. Plaintiffs allege such report was made by a District employee in retaliation, as it was false or misleading and made in close temporal proximity to Plaintiffs advocating for the removal of Bahret as C.B.'s paraprofessional. The claim of retaliation in violation of the Americans with Disabilities Act ("ADA") is only brought against the School District.

Plaintiffs served their First Request for Production of Documents on Defendants on October 24, 2024, and their First Interrogatories on Defendants on October 30, 2024. Defendants served their responses on December 23, 2024. Pertinent here are Interrogatory 6 and RFP 15, which request information and documents concerning the DCF report which was made against Plaintiffs.[2]

---

[2] *See* Pls.' Mot. to Compel, ECF No. 28. Copies of Interrogatory 6, RFP 15, and Defendants' responses are attached to Plaintiffs' Motion to Compel as Exhibits 5–8. *See* Pls.' Mot. to Compel, Ex. 5–8, ECF No. 28.

Defendants object to Interrogatory 6 and RFP 15 on the basis of relevance and that "[p]ersons who make or participate in making reports to DCF have immunity from civil liability [under] K.S.A. § 38-2223(f)."[3]  On February 19, 2025, the Court conducted a D. Kan. Rule 37.1(a) pre-motion discovery conference regarding the dispute.  When the dispute was not resolved, Plaintiffs filed the instant motion.[4]

Plaintiffs now seek an order from the Court compelling Defendants to fully respond and produce documents responsive to Interrogatory 6 and RFP 15.  Plaintiffs argue information concerning the DCF report is relevant on its face and is not protected from disclosure based on the immunity statute.  Specifically, Plaintiffs argue the immunity provision of K.S.A. § 38-2223(f) extends "only to individual defendants pertaining to state tort claims . . . and has no bearing on discoverability of information underlying the DCF complaint."[5]  Defendants argue Plaintiffs failed to plead facts or even conclusory allegations of malice or bad faith in connection with the DCF report and the retaliation claim, therefore the discovery sought is not relevant.  Further, Defendants argue mandatory reporters are immune from suit in the absence of malice, so allowing discovery of information concerning the DCF report would give rise to privacy concerns for those individuals who are legally mandated to make DCF reports.

**II.    Legal Standards**

    **a.  Scope of Discovery**

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery.  It states:

---

[3] *Id.*

[4] *See* Minute Entry and Order, ECF No. 27.

[5] Pls.' Mot. to Compel, ECF No. 28, p. 3

3

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[6]

The information sought must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable.[7] For discovery purposes, relevance is construed "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[8] Relevance is often apparent on the face of the discovery request and often dictates which party bears the burden of showing either relevance or the lack thereof. If the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevance by demonstrating the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[9] Conversely, when the relevance of the discovery request is not readily apparent on its face, the party seeking discovery has the burden to show the relevance of the request.[10]

### b. Kansas Code for Care of Children

---

[6] Fed. R. Civ. P. 26(b)(1).

[7] *No Spill, LLC v. Scepter Canada, Inc.*, No. 2:18-cv-2681-HLT-KGG, 2021 WL 5906042, at *3 (D. Kan. Dec. 14, 2021).

[8] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[9] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[10] *Id.*

4

The Kansas Code for Care of Children (the "Code") includes provisions regarding mandated reporters.[11] K.S.A. § 38-2223 requires "teachers, school administrators, and other employees of an educational institution that the child is attending" who have reason to suspect a child has been harmed as a result of neglect or abuse, to report the matter promptly to DCF.[12] Willful and knowing failure to make a required report is a class B misdemeanor.[13] The Kansas Legislature intended for the Code to be liberally construed to carry out the policies of the state and "encourage the reporting of suspected child abuse and neglect."[14] "One of the ways in which the legislature has attempted to encourage reporting is by providing immunity from suit for those who make reports."[15] The immunity provision of the Code states:

> Anyone who, without malice, participates in making a report or participates in any activity, investigation, or judicial proceeding resulting from the report shall have immunity from any civil liability that might otherwise be incurred or imposed.[16]

However, any person who willfully and knowingly makes a false report or makes a report they know lacks factual foundation is guilty of a class B misdemeanor.[17] It is clear the immunity provision of the Code is intended to encourage truthful non-malicious reporting of suspected child abuse and neglect.

---

[11] Article 22. Revised Kansas Code for Care of Children, K.S.A. § 38-2201 to 38-2292.

[12] K.S.A. § 38-2223(a)(1)(C), (c).

[13] *Id.* § 38-2223(e)(1).

[14] *Id.* § 38-2201(b)(5).

[15] *T.H. v. Univ. of Kansas Hospital Auth.*, 388 P.3d 181, 185 (Kan. Ct. App. 2017) (extending immunity to doctor who misdiagnosed child abuse when parents failed to show malice).

[16] K.S.A. § 38-2223(f).

[17] *Id.* § 38-2223(e)(3).

5

Information contained in confidential agency records concerning a child alleged or adjudicated to be in need of care may be disclosed as provided in K.S.A. § 38-2212. Specifically, K.S.A. § 38-2212(f) allows a court of competent jurisdiction, after *in camera* inspection, to order disclosure of confidential DCF records "pursuant to a determination that the disclosure is in the best interests of the child who is subject of the reports *or* that the records are necessary for proceedings of the court. The court shall specify the terms of disclosure and impose appropriate limitations."[18]

### III.   Interrogatory 6, RFP 15, and Defendants' Objections.

Interrogatory 6 asks Defendants to "[i]dentify and describe all material facts, persons involved, dates, times, Documents and Communications regarding a District employee's report to DCF regarding C.B." The School District, Sanders, and Hurla objected to Interrogatory 6 on the basis of relevance and immunity under K.S.A. § 38-2223(f), stating:

> Persons who make or participate in making reports to DCF have immunity from civil liability. K.S.A. § 38-2223(f). Information about any report to DCF about C.B. is not relevant to establish Plaintiffs' claims and thus, as written, this Interrogatory is outside of the scope of discovery and not proportional to the needs of the case.

Similarly, RFP 15 seeks "Documents or Communications regarding reports to the Kansas Department of Children and Families pertaining to C.B." All Defendants object to RFP 15 on the basis of relevance and immunity under K.S.A. §38-2223(f), stating:

> Persons who make or participate in making reports to DCF have immunity from civil liability. K.S.A. § 38-2223(f). Documents about any report to DCF is not relevant to establish Plaintiffs' claims and thus, as written, this [request] is outside the scope of discovery and not proportional to the needs of the case.

Because Interrogatory 6 and RFP 15 seek similar information, and Defendants object to both requests on the same bases, the Court discusses both discovery requests together below.

---

[18] *Id.* § 38-2212(f) (emphasis added).

## IV. Analysis

### a. Relevance

Plaintiffs allege the School District retaliated against them in five ways after they advocated for C.B.'s IDEA, ADA, and Section 504 rights. One of those alleged ways is based on the DCF report against Plaintiffs, namely:

> a District employee reported false or misleading information to DCF regarding [Plaintiffs'] treatment of C.B., shortly after and in close temporal proximity to their advocating for continued removal of Mr. Bahret as C.B.'s paraprofessional as a result of the Treatment of C.B. based on his Disabilities.[19]

K.S.A. § 38-2223(b)(1) requires that every report to DCF contain certain information, including the following, which is directly relevant to Plaintiffs' retaliation claim:

> the reasons why the reporter suspects the child may be in need of care; if abuse or neglect of sexual abuse is suspected, the nature and extent of the harm to the child, including any evidence of previous harm; and any other information that the reporter believes might be helpful in establishing the cause of the harm and the identity of the persons responsible for the harm.

Interrogatory 6 and RFP 15 seek information regarding the creation and making of the DCF report. Such information goes directly to Plaintiffs' ability to investigate their retaliation claim. The Court finds Interrogatory 6 and RFP 15 are facially relevant to Plaintiffs' retaliation claim. The burden to establish the lack of relevance is thus on Defendants.

Defendants object to Interrogatory 6 and RFP 15 on the basis of relevance, relying upon the immunity provision of K.S.A. § 38-2223(f) relating to DCF reports made "without malice." Defendants argue, "Given the absence in the pleadings of any facts or even conclusory allegations of malice or lack of bad faith in connection with the claim of retaliation or the allegation

---

[19] Pls.' Am. Compl., ECF No. 22, ¶ 174(b).

concerning the report to DCF, the discovery sought is not relevant to the claim or necessary to these proceedings or proportional to the needs of the case."[20]   In short, Defendants' argument is that Plaintiffs haven't pled malice, therefore Defendants will have immunity under K.S.A. § 38-2223, ergo the discovery sought through Interrogatory 6 and RFP 15 is not relevant.   Defendants further contend "[s]ince mandatory reporters are immune in the absence of malice and no malice is asserted, the discovery sought by Plaintiffs is beyond the scope of discovery permitted by Fed. R. Civ. P. 26 . . . ."[21]

The Court finds Defendants' argument unconvincing. Defendants dismiss the question of malice far too lightly.   "Malice is generally defined as actual evil-mindedness or specific intent to injure."[22] While it is true that Plaintiffs' First Amended Complaint does not mention the word "malice," that is not dispositive of the issue.   Instead, we must consider whether there are facts set forth in the Complaint from which the Court could infer that the Defendants acted with "actual evil-mindedness or specific intent to injure."[23]   The Court finds Plaintiffs' allegations that the School District retaliated against them when a School District employee reported "false" or "misleading" information to DCF regarding Plaintiffs' treatment of C.B., shortly after Plaintiffs

---

[20] Defs.' Resp. to Pls.' Mot. to Compel, ECF No. 29, p. 6.

[21] *Id.* at p. 7.

[22] *Smith v. Williams*, No. 20-cv-2224-EFM-GEB, 2022 WL 4245479, at *7 (D. Kan. Sept. 15, 2022).

[23] *Id.*; *See T.H.*, 388 P.3d at 187 (citing *Kennedy v. Mid-Continent Telecasting, Inc.* 394 P.2d 400, 407 (Kan. 1964)).   In *T.H.*, the Kansas Court of Appeals found "the district court cannot infer malice without some allegation as of fact to support such a claim" as the parents' pleadings only addressed the effect of the defendant doctor's actions, and not the doctor's intent.   *T.H.*, 388 P.3d at 187.   Here, Plaintiffs directly address the issue of intent.   Their pleadings allege Defendants intended to retaliate against them for seeking to remove Defendant Bahret as C.B.'s paraprofessional by making a false or misleading DCF report.

advocated for continued removal of Bahret as C.B.'s paraprofessional because of the treatment of C.C. based on his disabilities, is sufficient to raise an inference that Defendants acted with "actual evil-mindedness or specific intent to injure."

Whether Defendants acted with malice is a fact issue.[24] Presumably, that is why Defendants have not thus far filed a motion to dismiss Plaintiffs' retaliation claim. If after discovery Defendants believe they are entitled to immunity because Plaintiffs cannot show Defendants acted with malice, then perhaps the retaliation claim will be the subject of a dispositive motion. But that fact question should be decided on the merits, rather than put before the Court as an objection to producing discovery.[25] The Court therefore overrules Defendants' relevance objection, and instead concludes the information and documents requested in Interrogatory 6 and RFP 15 are clearly relevant to Plaintiffs' retaliation claim and the related question of whether the DCF report was made maliciously.

### b. Immunity Pursuant to K.S.A. § 38-2223(f)

Defendants also argue the immunity provision of K.S.A. § 38-2223(f) prohibits disclosure of information concerning the DCF report made against Plaintiffs as it "would be contrary to the public policy concerns evidenced by the Kansas statutory scheme that is designed to protect those individuals who are required to make reports."[26] While the Court appreciates Defendants' privacy concerns, it does not agree the Kansas Code for Care of Children's statutory scheme absolutely prohibits the discovery of information related to a DCF report as Defendants suggest. Indeed, the language of K.S.A. § 38-2223(f) suggests otherwise.

---

[24] *See T.H.*, 388 P.3d at 186–87; *Smith*, 2022 WL 4245479, at *7.

[25] *See Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 639 (D. Kan. Mar. 31, 2004).

[26] Defs.' Resp. to Pls.' Mot. to Compel, ECF No. 29, p. 7.

In fact, the Code contemplates that there will be situations such as this where discovery related to DCF reports is necessary and appropriate. A court may order disclosure of confidential agency records when "the disclosure is in the best interests of the child who is the subject of the reports or [when] the records are necessary for the proceedings of the court."[27] This differs from many other Kansas statutes regarding the disclosure of privileged documents supporting the creation of a report.[28] For example, the peer review privilege recognized under Kansas law at K.S.A. § 65-4915 requires "findings and other records submitted to or generated by peer review committees or officers shall be privileged *and shall not be subject to discovery*, subpoena or other means of legal compulsion . . . ."[29] Such language prohibiting the disclosure of information related to the making of DCF reports is absent from the Code. This suggests, while K.S.A. § 38-2223(f) provides a good-faith reporter of suspected child abuse with immunity from civil liability, the statutory scheme does not create an absolute privilege preventing discovery regarding the resulting report or related information.[30]

---

[27] *See* K.S.A. § 38-2212(f). ("The court shall specify the terms of disclosure and impose appropriate limitations.").

[28] *See, e.g.*, K.S.A. § 65-4915; K.S.A. § 65-4925.

[29] K.S.A. § 65-4915 (emphasis added).

[30] This District has often required confidential DCF information to be disclosed. *See, e.g.*, *P.S. ex rel. Nelson v. The Farm, Inc.*, No. 07-2210-JWL-DJW, 2007 WL 4570872, at *1 (D. Kan. Dec. 27, 2007) (denying motion to quash business records subpoena issued to DCF regarding twenty-eight foster children); *Brooks v. Hinzman*, No. 13-2410-EFM, 2014 WL 1047948, at *4 (D. Kan. Mar. 17, 2014) (finding confidential records submitted by DCF are necessary for the proceedings and must be produced after in-camera review); *Boone v. TFI Family Servs., Inc.*, No. 14-2548-JTM-KGG, 2016 WL 3156823, at *2 (D. Kan. June 6, 2016) (requiring DCF to produce ESI relating to four foster children subject to administrative action); *Smith v. TFI Family Servs., Inc.*, No. 17-02235-JWB-GEB, 2019 WL 4194046, at *2 (D. Kan. Sept. 4, 2019), *objections overruled*, No. 17-2235-JWB, 2020 WL 42316 (D. Kan. Jan. 3, 2020) (ordering non-party DCF produce four children's files).

K.S.A. § 38-2223(f) does not expressly address the discoverability of information underlying the DCF report, and Defendants fail to cite any authority to support their argument that K.S.A. § 2223(f) prohibits such discovery. Moreover, it is clear from the language of K.S.A. § 38-2223(f) that a party who participates in making a DCF report or participates in any activity or investigation relating to a DCF report is *only* immune from civil liability if they do so without malice. "And generally, malice is a question of fact . . . ."[31] Making such a factual determination requires insight into a parties' motives for taking the action—in this case—the motivation for making the DCF report. Simply put, discovery is necessary to determine whether Defendants are entitled to immunity under K.S.A. 38-2223(f).[32]

Plaintiffs' discovery requests, Interrogatory 6 and RFP 15, seek information regarding the creation of the DCF report. Such information goes directly to the question of whether the DCF report was made with "actual evil-mindedness or specific intent to injure."[33] Accordingly, allowing discovery into the creation of the DCF report will ultimately assist in making the factual determination of whether immunity applies to any of the Defendants.[34]

---

[31] *Smith*, 2022 WL4245479, at *7 (quoting *Turner v. Halliburton Co.*, 722 P.2d 1106, 1113 (Kan. 1986)); *see also T.H.*, 388 P.3d at 186 (citing *Turner*, 722 P.2d at 1113).

[32] *Cf. Lewis v. City of Ft. Collins*, 903 F.2d 752, 754 (10th Cir. 1990) (In a qualified immunity case, the court held, "Qualified immunity is not a shield from *all* discovery. In some cases, discovery may be necessary to determine whether the defendants challenged conduct violated clearly established law and thus, whether defendants are entitled to qualified immunity" (emphasis in original)); *King v. United States*, No. 16-cv-1435-EFM-TJJ, 2017 WL 3723291, at *3 (D. Kan. Aug. 29, 2017).

[33] *Turner*, 722 P.2d at 1113.

[34] *See Martin v. Cnty of Santa Fe*, 626 F. App'x 736, 740 (10th Cir. 2015) (discovery may be permitted when there is a genuine fact issue raised as to an immunity claim).

The Court is aware that Defendants also summarily argue against production on the basis that "Defendant District can neither require nor prevent a mandatory reporter from making a report to DCF and, as such, the actions of the mandatory reporter cannot be attributed to Defendant District as an adverse action sufficient to support a retaliation claim under [the ADA]."[35] But this argument is premature and raises a legal issue not properly before the Court at this time.[36] The Court again declines to determine here, on the basis of Defendants' objection to discovery requests, whether any of the individual Defendants are entitled to immunity, and, if not, whether the malicious actions of a School District employee can be imputed to the School District. As already discussed, discovery into the factual issue of whether a malicious act even took place is necessary before the immunity issues can be determined.

While K.S.A. § 38-2209(a)(2) provides DCF records are "confidential," this does not mean the information regarding them is not discoverable.[37] "It is well-established in this District that private or confidential documents are not necessarily shielded from discovery because 'privileged'

---

[35] Defs.' Resp. to Pls.' Mot. to Compel, ECF No. 29, p. 1.

[36] *See Sonnino*, 220 F.R.D. at 639; *Black & Veatch Corp. v. Aspens Ins. (UK) Ltd.*, 297 F.R.D. 611, 615 (D. Kan. 2014) ("The objecting party has the burden to establish the existence of the privilege or immunity prior to the time a court is asked to determine its sufficiency and applicability.").

[37] *See* K.S.A. § 38-2212 (providing principles of appropriate access to DCF records).

and 'confidential' are two distinct concepts."[38]   And, there is an Agreed Protective Order entered in this case to protect the parties' interests in their confidential documents and information.[39]

While the information sought by Plaintiffs bears directly on their retaliation claim, it also bears directly on the question of whether the DCF report was made with or without malice.  In fact, it is difficult to see how the issues of malice and entitlement to immunity could be resolved *without* the information sought by Plaintiffs.  The Court thus overrules Defendant's immunity objection to Interrogatory 6 and RFP 15.

### c. 5th Amendment Rights

Defendants' response to Plaintiffs' motion to compel, for the first time, argues given the criminal jeopardy placed on those who fail to report, make false reports, or improperly disclose confidential information, Defendants could face criminal liability for responding to the discovery requests.   Defendants assert their Fifth Amendment right against self-incrimination as an additional reason for not being required to respond to the discovery requests.   However, "[w]hen ruling on a motion to compel, a court generally considers only those objections that have been

---

[38] *Kendall State Bank v. West Point Underwriters, LLC*, No. 10-2319-JTM-KGG, 2013 WL 593957, at *2 (D. Kan. Feb. 15, 2013); *McCloud v. Board of Geary County Comm'rs*, No. 06-1002-MLB-DWB, 2008 WL 1743444, at *4 (D. Kan. Apr. 11, 2008) ("[e]ven assuming Defendant's records are 'private' or confidential, this does not mean the records are privileged and/or nondiscoverable"); *Boone v. TFI Family Servs., Inc.*, No. 14-2548-JTM-KGG, 2016 WL 3156823, at *2 (D. Kan. June 6, 2016) ("[i]t is well-established in this District that private or confidential documents are not necessarily shielded from discovery because 'privileged' and 'confidential' are two distinct concepts").

[39] *See* Agreed Protective Order, ECF No. 36.   *See Boone v. TFI Family Servs., Inc.*, No. 14-2548-JTM-KGG, 2016 WL 3156823, at *2 (D. Kan. June 6, 2016) (finding protective order can protect privacy interests); *P.S. ex rel. Nelson v. The Farm, Inc.*, No. 07-2210-JWL-DJW, 2007 WL 4570872, at *3 (D. Kan. Dec. 27, 2007) (overruling confidentiality objections when protective order regarding referenced records was already in place).

timely asserted in the initial responses to the discovery request and that are subsequently reasserted and relied upon in the response to the motion to compel."[40]  Defendants did not object to discovery of information and material regarding the DCF report on Fifth Amendment grounds.  Defendants therefore waived their objection to Interrogatory 6 and RFP 15 on this basis.[41]

Even if the Court were to consider Defendants objections on the basis of the Fifth Amendment, Defendants' argument would fail.  Defendants state due to the criminal liability placed upon those who make a false report or those who improperly disclose confidential DCF records, responding to Plaintiffs' discovery requests places them in criminal jeopardy. [42] However, the Fifth Amendment "protection does not allow a witness to refuse answering 'merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination.'"[43]  Instead, Defendants must "show that a compulsory response to 'individual questions . . . will pose a substantial and real hazard to subjecting them to criminal liability.'"[44]

---

[40] *Sonnino*, 220 F.R.D. at 642.

[41] "It is well settled that any objection to discovery requests which are not timely asserted are deemed waived, unless the responding party establishes good cause to excuse its failure to timely object."  *Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 520 n.23 (D. Kan. 2010).

[42] *See* K.S.A. § 38-2223(e) (making it a class B misdemeanor to make a false DCF report); K.S.A. § 2209(b) (making it a class A nonperson misdemeanor for improper disclosure of confidential records).

[43] *McIntyre v. Unified Gov't of Wyandotte Cnty.*, No. 18-2545-KHV-KGG, 2021 WL 5505454, at *3 (D. Kan. Nov. 24, 2021) (quoting *KCI Auto Auction, Inc. v. Ephrem*, No. 6:19-CV-1040-EFM-GEB, 2020 WL 5503350, at *3).

[44] *KCI Auto Auction, Inc.*, 2020 WL 5503350, at *3 (quoting *United States v. Schmidt*, 816 F.2d 1477, 1482 (10th Cir. 1987)).

Defendants have failed to show that their responses to the discovery requests at issue, Interrogatory 6 and RFP 15, present a substantial and real hazard of subjecting them to criminal liability.[45] Defendants merely assert, in the final two sentences of their response that responding to Plaintiffs' discovery requests would place "Defendants in potential criminal jeopardy." Defendants' generalized objection is not compelling and therefore their objection on the basis of the Fifth Amendment is overruled.

### d. *In-Camera* Review

Notwithstanding the above, the Court appreciates the confidentiality and privacy concerns raised by Defendants. Defendants request if the Court compels production of "Documents or Communications regarding reports to [DCF] pertaining to C.B.," it do so after an *in-camera* review, pursuant to K.S.A. § 38-2212(f).[46] Even though K.S.A. § 38-2212(f) only applies to "records and reports in the possession or control of" DCF, which is not the information sought through Interrogatory 6 and RFP 15, the Court will conduct an *in-camera* review of Defendants' responses to Interrogatory 6 and RFP 15, prior to their production to Plaintiffs.[47] Also, if Defendants believe there is privileged information (separate and apart from Defendants' immunity argument) contained in their answers and/or documents produced in response to Interrogatory 6 and/or RFP 15 that requires redaction, Defendants may submit, along with the complete answers

---

[45] *Compare McIntyre*, 2021 WL 5505454, at *3 (sustaining Fifth Amendment objection when interrogatory required Defendant to disclose methods in which he "may have accepted, concealed, or invested proceeds of his misconduct or illicit activity . . . .") *with KCI Auto Auction, Inc.*, 2020 WL 5503350, at *3 (D. Kan. Sep. 11, 2020) (overruling Fifth Amendment objection where Defendants claims he "is at a real risk of committing perjury" in his interrogatory responses).

[46] *See* Defs.' Response to Pls.' Mot. to Compel, ECF No. 29, p. 4.

[47] K.S.A. § 38-2209(a)(2) (defining confidential agency records).

and responsive production, a proposed redacted version for the Court's *in camera* review. After reviewing the responses and responsive documents, the Court will specify the terms of the disclosure and impose appropriate limitations, including redactions, if any, where necessary.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion to Compel Discovery (ECF No. 28) is **GRANTED.**

**IT IS FURTHER ORDERED THAT** the District Defendant, Defendant Sanders, Defendant Bahret, and Defendant Hurla must email the undersigned Magistrate Judge their responsive answers to Plaintiffs' Interrogatory 6 and copies of all documents responsive to Plaintiffs' RFP 15, along with a proposed redacted version if so desired, within fourteen (14) days of this Order.

**IT IS SO ORDERED.**

Dated May 8, 2025, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge